FRED KNIGHT vs. JOHN F. TRAINOR
FRED KNIGHT, JR. p. a. vs. SAME
NOVEMBER 5, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

MOSS, J. These are actions brought by a boy and his father respectively to recover damages for personal injuries which were sustained by the former in a collision between him and a motor car operated by the defendant and which are alleged to have been caused by the defendant's negligent operation of it. The trial of the two cases together in the superior court resulted in directed verdicts for the defendant; and each case is now before us on the plaintiff's bill of exceptions, in which the only exception now insisted upon is to the action of the trial justice in granting the defendant's motion for the direction of a verdict in his favor.

On the evidence our decision must be the same in each case. So we shall first confine our attention to the son's case, referring to him as the plaintiff. The collision occured on January 10, 1936 about noon in Hope street in the business section of Bristol in this state, at a point about opposite the post-office building, which is situated on the east side of that street.

That is one of the main streets of Bristol. The curbs are of granolithic construction, the distance between them being thirty-two and one-half feet. The main sidewalk

on the east side is about three and one-half feet above the street, and is supported by a perpendicular wall, at the base of which is a cement lower walk about four feet wide and of the same height as the curb. On the top of the wall is a cap eight inches high protecting the upper walk on the street side. In front of the post-office is a flight of five granite steps from the lower walk, beginning eighteen inches back from the face of the curb, to the upper walk. The width of the flight of steps is twenty-four feet. These conditions existed at the time of the collision.

At that time the plaintiff was twelve years old and was a pupil at a public school located about a block east of the scene of the accident. With many of his schoolmates he had his lunch that day at the school building during the noon recess and spent the rest of the recess playing along the upper sidewalk near the post-office, as they frequently did. There was evidence that it was not an uncommon practice for the school children to run into the street near the post-office.

Just before the accident the plaintiff was playing tag with a schoolmate and was running along the upper sidewalk and had reached a point a little south of the north end of the top of the flight of steps, when, according to his testimony and that of another boy, Harris Fish, a third boy, called Siggy, gave him a push, which precipitated him down the steps, so that he lost control of himself and ran rapidly down the steps and into the street, where he came in contact with the left side of the defendant's car and was injured by the handle of the door.

The defendant had for about twelve years been driving his car in Bristol perhaps twice a week; and perhaps about once a month he lunched at the Belvedere Hotel on Hope street opposite the post-office, parking somewhere in front of the hotel. On these occasions he had observed the school children playing out in front of the post-office during the noon hour, and all along the street.

Just before the accident, which was on a clear day, with driving conditions good, he was driving his car south on Hope street, near the middle, intending to get his lunch at the hotel, and was looking for a place to park in front of it or just beyond it on the west side of the street. There were then only about four cars in the vicinity on that side of the street. He testified, without contradiction, that while he was observing the right side of the street to find a place to park there, he was also keeping the east side of the street under observation and suddenly saw the plaintiff, followed closely by another small boy, come running rapidly down the steps and out into the street. A car was then approaching from the south.

The defendant testified that his car was then moving at about ten miles miles an hour; that as soon as he saw the plaintiff running rapidly down the steps, he brought his car to a stop in about half its length; and that after it was stopped, the plaintiff "sort of swerved and lost his balance and fell against the side of the car."

Several eye-witnesses fully corroborated this testimony as to just how the accident occurred, and two of them testified also that the plaintiff ran down the steps and into the street without having been thrown off his balance by a push from a playmate. One of these witnesses and another testified that the plaintiff said immediately after the accident that he was to blame for it. One of the witnesses, who otherwise supported the defendant's testimony as to just how the accident occurred, testified that the car went a short distance after the collision but not more than six feet.

On the other hand, the plaintiff denied that he said that he was to blame for the accident and testified that he and another boy, as above stated, were playing tag and that he was pushed down the steps by a third boy. This testimony was evidence for the jury of the absence of contributory negligence.

We are convinced that in the testimony of the defendant and his witnesses there was no evidence that the plaintiff's

injuries were caused in any degree by negligence of the defendant. There was, however, evidence for the plaintiff that deserves consideration for its bearing on the question of such negligence by the defendant in operating his car at an excessive rate of speed or in not using reasonable care in stopping it after he saw the plaintiff running into the street.

This consisted of four statements in the testimony for the plaintiff. The first two were by the same boy who testified that the plaintiff was pushed down the steps. When asked: "Did you see the car before it struck Junior?", he replied: "Yes"; and when asked: "Was it going fast or slow?", he replied: "About thirty-five—twenty-five." He also testified that the car went about ten or fifteen feet after the collision.

The third of these four statements was made by this plaintiff's father, who testified that the defendant said to him, very soon after the accident, in the presence of the injured boy's grandfather: "I saw the boy forty or fifty feet before I hit him." The fourth statement was made by this grandfather who testified, as to this same conversation, that the defendant said that he saw the boy in the street when he was forty or fifty feet away from him.

If the exception before us were to the refusal of the trial justice to grant a motion by the defendant for a new trial after a verdict for the plaintiff, there would be some force in a contention by the defendant that, because of its rather indefinite character and of the fact that the witness was only ten years old when he testified, the statement of the plaintiff's playmate as to the speed of the car was not entitled to much weight as against positive testimony of a number of disinterested witnesses to the contrary.

So also, in ruling on such an exception, there would be some force in a contention that the testimony which was given by the father and grandfather of the injured boy as to what the defendant told them after the accident, and which was denied by him, might be outweighed by the testimony of a number of disinterested witnesses as to the

short distance which the car went after the plaintiff ran into the street.

But on the only exception which is before us, to the direction of a verdict for the defendant, such contentions are not pertinent, our opinion as to the preponderance of the evidence being immaterial; and to overrule this exception we should have to find that these four statements were of no probative force on the issue of negligence by the defendant in operating his car at excessive speed at the time when he first saw the plaintiff running out, or in failing to bring it to a stop afterwards as quickly as he should have done.

We are convinced that we cannot properly so find. On the contrary, we find that there was evidence for the jury in favor of the plaintiff on this issue. Therefore, our decision is that in each case the trial justice erred in directing the jury to return a verdict for the defendant.

In each case the plaintiff's exception to the direction of a verdict for the defendant is sustained, and the case is remitted to the superior court for a new trial.

*Thomas L. Carty,* for plaintiffs.
*Clifford A. Kingsley, Francis V. Reynolds,* for defendant.